## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBIN MARIE MCSHERRY,** | : | |
| | : | **Civil Action No. 1:04-CV-132** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DEPARTMENT OF LABOR &** | : | |
| **INDUSTRY, BUREAU OF WORKERS'** | : | |
| **COMPENSATION,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Defendant's motion for summary judgment.  (Doc. No. 35.)  The

motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the motion

will be granted and judgment will be entered for Defendant.

## I.    <u>INTRODUCTION</u>

### A.    **Procedural History**

Plaintiff, acting <u>pro se</u>, originally commenced this action on January 20, 2004, claiming

that the above-captioned Defendant and a number of its employees violated her rights under both

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and the Americans

with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u> ("ADA").  (Doc. No. 1.)  In August 2004,

Plaintiff retained counsel and subsequently was granted leave to file an amended complaint,

which was filed on January 18, 2005.[1]  (Doc. No. 32.)  In the amended complaint, Plaintiff has

dropped her claims against the individual defendants formerly named and is proceeding only

---

[1]       While Defendant's motion for summary judgment was under consideration,
Plaintiff notified the Court that she was terminating her attorney, and her counsel subsequently
moved for leave to withdraw.  (Doc. Nos. 53, 54.)  The Court granted counsel's motion to
withdraw (Doc. No. 55), and it does not appear that Plaintiff has retained new counsel.

against the Department of Labor & Industry, Bureau of Workers' Compensation ("L&I" or

"Defendant").  Specifically, Plaintiff has asserted three causes of action against L&I: (1) a claim

of racial discrimination brought under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e-2(a) (Count I); a

claim of disability discrimination brought under the ADA and § 1983 (Count II); and a claim

under § 1983 that she was retaliated against after exercising her rights under the First

Amendment to the United States Constitution (Count III). (Id.)

> **B.     Factual Background**[2]

Plaintiff was employed as a Clerk 2 by the Commonwealth of Pennsylvania Department

of Labor and Industry, Bureau of Workers' Compensation from on or about May 15, 2000 until

May 2, 2003, when her employment was officially terminated by Defendant.  (Doc. No. 32, Am.

Compl. ¶ 5; Doc. No. 38, Ex. A., Letter from John P. Sariano to Plaintiff dated April 30, 2003.)


On May 31, 2002, Plaintiff was involved in a physical altercation and argument with

Deborah Williams, an African American co-worker in the Petitions Section in which Plaintiff

---

[2]     On May 23, 2005, Defendant submitted its Statement of Material Facts pursuant to
Middle District Rule 56.1 in support of its motion for summary judgment, setting forth 31 undisputed
facts together with supporting citation to the evidence of record.  (Doc. No. 38.)  In response, Plaintiff
filed a Response to Defendant's Statement of Material Facts in which she denies 14 of Defendant's
factual assertions.  (Doc. No. 43.)  Whereas Defendant has supported its version of the facts by citation to
sworn affidavits, depositions, or other evidence, Plaintiff has offered almost no evidence in support of her
objections.  In many instances, Plaintiff relies on nothing more than reference to the amended complaint
to support her factual denials.  (See id., ¶¶ 6, 9, 17, 18, 19, 22.)  Elsewhere, Plaintiff offers no support at
all for her denial of a particular assertion of fact.  (See id., ¶¶ 16, 23-30.) Plaintiff's showing in this regard
is clearly inadequate.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (non-moving party may not
rest on allegations in the complaint but must "go beyond the pleadings and by [his] own affidavits, or by
the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that
there is a genuine issue for trial") (internal quotations omitted); see also L.R. 56.1 ("Statements of
material facts in support of, or in opposition to, a motion shall include references to the parts of the record
that support the statements.").  The Court has engaged in an independent review of the record, but, where
no evidence is offered in support of Plaintiff's denial of a fact alleged in Defendant's properly supported
statement, the Court has accepted the fact as true.  See id.; see also infra Part II.

worked.  (Am. Compl. ¶ 32; Doc. No. 38, Ex. C; McSherry Dep. at 79-80.)  Plaintiff testified

that during this altercation, Williams "pushed her with her body," and Plaintiff believed

Williams was the aggressor.  (McSherry Dep. at 79.) The L&I conducted a pre-disciplinary fact-

finding and investigation session on June 4, 2002, to gather facts surrounding the incident and to

provide each employee with an opportunity to be heard.  (Am. Compl. ¶ 5; McSherry Dep. at

79.)  On June 5, 2002, both Williams and Plaintiff were verbally reprimanded for their part in the

confrontation.  (Doc. No. 38, Ex. C.)

On July 2, 2002, Plaintiff filed an Americans with Disabilities Act Accommodation

Request Form with her supervisor, Beverly Scott, wherein Plaintiff requested certain job

accommodations based on Plaintiff's statement that she could not lift more than 25 pounds and

she needed to walk and stretch her hip every fifteen minutes.  (Am. Compl. ¶ 9.)  Additionally,

Plaintiff maintained that she could not stand for long periods could not engage in any climbing

activity.  (Id.)  Plaintiff's claimed limitations allegedly stemmed from a non-work related injury

to her right hip sustained in 1984.  (Am. Compl. ¶ 10.)  Copies of Plaintiff's ADA

accommodation request form were distributed to other supervisory personnel within Plaintiff's

division at the L&I.  (Id. ¶ 7; Doc. No. 38, Dep. of Robin McSherry at 27.)  After completing the

accommodation request form, Plaintiff did not advise her managers that she was being required

to lift boxes weighing in excess of 25 pounds.  (McSherry Dep. at 28.)

On or about March 11, 2003, Plaintiff claims she aggravated and reinjured her hip after

she moved heavy boxes in the course of her job duties.  (Id. ¶ 8.)  Although in her complaint she

claims that she filed an injury report at Beverly Scott's insistence, evidence of this complaint is

not contained in the record.  (Id. ¶¶ 13, 14.)

Gina Wiskemann was a supervisor in the L&I's Records Management Section and, later, was appointed acting temporary supervisor of the Petitions Section in which Plaintiff worked.  In or around April 2003, Plaintiff became upset when Ms. Wiskemann transferred "an important duty involving the Bureau of Workers' Compensation insurance claims database from Deborah Williams [one of Plaintiff's co-workers in the Petitions Section] . . . to an employee in Wiskerman's [sic] supervisory section."  (Id. ¶ 11.)  Plaintiff was upset about the decision because she was seeking a position as a backup to Ms. Williams and viewed the transferred job responsibilities as necessary for her to seek upward mobility within the L&I.  (Id.; McSherry Dep. at 49-52.)  Plaintiff complained to Helen Elliot, president of Plaintiff's union, AFSCME Local #2527, to protest the job transfer and threatened to file a grievance.  (Am. Compl. ¶ 16.) Elliot advised Plaintiff that she would follow up with Wiskemann to discuss the job transfer. (Id.)  On April 14, 2003, McSherry met with Elliot and Wiskemann to address McSherry's concern about the transferred job function.  (McSherry Dep. at 46; SCSC Tr. at 52-53.)[3]  During this meeting, the parties discussed behavior issues that McSherry was having, and McSherry raised the issue regarding her request to relocate her desk.  (Doc. No. 38 at ¶ 16

---

[3]     Plaintiff denies this fact, but in doing so states only "Denied as written.  The meeting referenced in this paragraph was the result of complaints filed with Helen Elliot by email against Wiskerman [sic]."  (Doc. No. 43 at ¶ 15 (citing McSherry Dep. at 47).)  The Court cannot discern what about this asserted fact Plaintiff denies.

and Ex. B, SCSC Tr. at 14, 52-53.)[4]

On or about April 17, 2003, Wiskemann directed Plaintiff to move her workstation to another desk in response to Plaintiff's request.  (Id. ¶ 17.)  Plaintiff claims that the desk-transfer was ordered approximately one year after Plaintiff initially made the request.  (Id. ¶ 19.)  Plaintiff alleges that, until April 17, 2003, Plaintiff's request was ignored while other unnamed employees were granted desk transfers.  (Id.)  According to Plaintiff, the move Wiskemann ordered required that Plaintiff "move heavy file boxes and office equipment, much of which exceeded the weight limits" provided in Plaintiff's ADA Accommodation Request Form.  (Id. ¶ 18.)

While moving her personal items from her desk, Plaintiff became agitated, noisily moved objects and complained to herself, and raised her voice to Wiskemann.  (Doc. No. 38 ¶ 18.)[5]  During this time, a number of Plaintiff's co-workers witnessed her yelling, swearing, and complaining loudly.  (Id. ¶¶ 19, 22; Ex. D.)  Several witnesses advised Wiskemann that they were uncomfortable about what they had seen and expressed concerned that Plaintiff was

---

[4]     Plaintiff claims to deny this fact, arguing that the "facts alleged in this paragraph are based solely upon the unsupported, self-serving testimony of Gina Wiskerman [sic].  At no point in Plaintiff's deposition is this even discussed, let alone admitted by Plaintiff."  (Doc. No. 43 ¶ 16.)  Again, Defendant has supported this claimed fact with citation to sworn testimony, and Plaintiff has not supported her denial with citation to evidence or in any way other than to state that she "adamantly denies" that behavioral issues or relocation issues were discussed during the meeting.  That this asserted fact was not discussed during Plaintiff's deposition is not determinative as to whether the fact is undisputed.  As Plaintiff has not adequately disputed this fact, the Court accepts it as true.

[5]     Plaintiff denies this fact with no citation to the record, and the fact is accepted as true.  (Doc. No. 43 ¶ 18.)  Moreover, Plaintiff does not so much deny the fact so much as she explains it: "Plaintiff was agitated due to a mental state created and induced by Wiskerman's [sic] flagrant disregard for Plaintiff's known physical and mental impairments."  (Id.)  Plaintiff cites only to her amended complaint in support of this explanation.  (Id.)

permitted to remain in the office following what one witness described as "a violent outburst." (Id.; Ex. D.)[6]  In connection with this incident, Plaintiff either bumped into or pushed another coworker, who believed he had been assaulted and submitted a form to report workplace violence.  (Id. ¶ 21 and Ex. E.)

Following this incident, Plaintiff was escorted from the building and suspended from her employment.  (Doc. No. 38 ¶ 24.)  A fact-finding inquiry into Plaintiff's actions on April 17, 2003 was scheduled for April 18, 2003, and Plaintiff failed to attend this hearing.  (Id. ¶ 25.)  As a result of the fact-finding, Tom Dinsmore issued a memorandum to Jerry Maffei, a manager with the L&I, recommending that Plaintiff be dismissed from her employment for disrupting the workplace, flouting authority, and engaging in workplace violence on April 17, 2003.  (Id.)  On April 30, 2003, Plaintiff was officially dismissed from her employment.  (Id.)

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is material if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a

---

[6]     Notwithstanding the undisputed fact that Defendant attached copies of 17 witness statements given on April 17, 2003, Plaintiff purports to deny that witnesses wrote statements about what they had seen on the grounds that "Wiskerman [sic] solicited these statements from Plaintiff's coworkers and, most likely, coached them in the writing thereof."  (Doc. No. 43, ¶ 22.)  Plaintiff supports this assertion by citing to the allegations she made in the amended complaint.  As such, Plaintiff has not adequately challenged Defendants' properly supported assertion of fact regarding these witness' statements.

reasonable fact-finder to return a verdict for the non-moving party.  Id. at 249.  The nonmoving party receives the benefit of all reasonable inferences.  Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint.  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Id. at 322.

III.   **DISCUSSION**

Plaintiff has brought three separate counts against Defendant arising out of her termination.  In Count I of the amended complaint, Plaintiff alleges that Defendant "discriminated against Plaintiff, a Caucasian female, by treating her differently than Deborah Williams, an African American female, in violation of 42 U.S.C.A. § 1983 and 42 U.S.C. § 2000e-2(a)."  (Am. Compl. ¶ 37.)  The gravamen of this allegation is that the altercation between Plaintiff and Deborah Williams that occurred in July 2002 violated the same workplace violence policy under which Plaintiff was terminated following her outburst on April 17, 2003.  It appears that Plaintiff is claiming that Defendant's failure to terminate Deborah Williams for alleged workplace violence in 2002 was the result of racial bias, because Plaintiff's employment was

subsequently terminated for the same infraction.[7]

In Count II, Plaintiff claims that Defendant was aware of her hip ailment, ordered her to move her desk without assistance which caused Plaintiff to aggravate her hip condition, and that the resulting pain, coupled with Plaintiff's psychological ailments, "caused Plaintiff to act in a manner other employees allegedly found 'disruptive.'" (Id. ¶ 41.)  Plaintiff thus claims that her termination was directly related to, and caused by, Gina Wiskemann's alleged disregard of her physical and mental conditions.  Claiming she was otherwise qualified for her position at the L&I, Plaintiff contends that her dismissal violated both the ADA and 42 U.S.C. § 1983.  (Id. ¶¶ 31-47.)

Finally, in Count III, Plaintiff claims that Wiskemann ordered her to move her workstation a mere three days after Plaintiff had lodged a complaint with the union regarding Wiskemann's alleged reorganization of Plaintiff's department.  Plaintiff further claims that Wiskemann knew Plaintiff was likely to be injured in the course of this move, and that the move thus constituted retaliation for Plaintiff's alleged First Amendment speech activity.  Moreover, Plaintiff claims that her conduct leading to her termination "was the direct and proximate result of Wiskerman's [sic] flagrant disregard of Plaintiff's known physical and mental impairments," and the disciplinary proceedings that followed Plaintiff's outburst on April 17, 2003 constituted further retaliation for her First Amendment activity, in violation of 42 U.S.C. § 1983.  (Id. ¶¶ 48-55.)

Defendant asserts Eleventh Amendment immunity from Plaintiff's § 1983 and ADA

---

[7]     As noted, L&I supervisors issued verbal reprimands to both Williams and McSherry for their roles in the July 2002 altercation.

claims.  Additionally, L&I contends that it is entitled to summary judgment on Plaintiff's Title

VII claims of racial discrimination because Plaintiff has failed to come forward with evidence in

support of this claim.

### A.      Eleventh Amendment Immunity

Defendant maintains that as a state agency, it enjoys immunity from all of Plaintiff's

claims brought under 42 U.S.C. § 1983 for racial discrimination, First Amendment retaliation,

and disability discrimination.  The Eleventh Amendment to the United States Constitution

provides that:

> The Judicial Power of the United States shall not be construed to
> extend to any suit in law or equity commenced or prosecuted
> against one of the United States by Citizens of another State, or by
> Citizens or Subjects of any Foreign State.

U.S. Const. am. XI.  Although the terms of the Amendment do not specifically proscribe suits

against a state by its own citizens, the Supreme Court has held that states are immune from such

suits brought in federal court.  Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000);

Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985) Hans v. Louisiana, 134 U.S. 1, 10

(1890); see also Board.of Tr. of the Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001) ("The

ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by

private individuals in federal court.") (citation omitted).

Accordingly, "[u]nder the Eleventh Amendment, a plaintiff other than the United States

or a state may not sue a state in federal court without the latter state's consent unless Congress

abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision

granting Congress that power."  Chittister v. Dept. of Comty. & Econ. Dev., 226 F.3d 223, 226

(3d Cir. 2000).  Additionally, the Eleventh Amendment proscribes suits against a state agency or

department that has no existence apart from the state.  <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 25

(3d Cir. 1981).  The Supreme Court has clarified that "the relief sought by a plaintiff suing a

State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."

<u>Seminole Tribe of Florida v. Fla.</u>, 517 U.S. 44, 58 (1996). Whether for monetary damages or for

injunctive relief, any suit against a state in federal court is barred under the Eleventh

Amendment.  <u>See</u> <u>Cory v. White</u>, 457 U.S. 85, 90-91 (1982); <u>Laskaris</u>, 661 F.2d at 26.  A state

may consent to suit against it in federal court, thereby waiving its immunity.  However,

Pennsylvania has not waived its immunity generally, or in this particular case.  42 Pa. Cons. Stat.

Ann. § 8521(b) (2005); <u>Laskaris</u>, 661 F.2d at 25.[8]

Plaintiff does not squarely address Defendant's argument that suits against the

Commonwealth under § 1983 are barred pursuant to the Eleventh Amendment.  Instead, Plaintiff

asserts that "Defendant, while citing ample case law for the general principle of Eleventh

Amendment immunity from private suit, has in no wise offered any caselaw, whatsoever,

indicating that this immunity applies to Plaintiff's racial discrimination, disability

discrimination, or first amendment retaliation claims under Section 1983."  (Doc. No. 40 at 7.)  It

appears that Plaintiff is claiming, without legal support, that states may be subject to suit under §

---

[8]        In addition to a state's voluntary waiver, there are two other ways by which a
state's immunity under the Eleventh Amendment may be abrogated.  Congress may abrogate the
states' immunity so long as it "both unequivocally intends to do so and acts pursuant to a valid
grant of constitutional authority." <u>Bd. of Tr. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 363 (2001)
(internal quotations omitted). Additionally, the federal courts can issue an injunction against a
state officer if there is evidence of ongoing violations of federal law and the injunction will
afford a plaintiff prospective relief from the illegal state action. <u>See</u> <u>Alden v. Maine</u>, 527 U.S.
707, 757 (1999); <u>Seminole Tribe</u>, 517 U.S. at 73; <u>see also</u> <u>Ex parte Young</u>, 209 U.S. 123, 159-60
(1908).  As will be explained, none of these exceptions apply to Plaintiff's claims under the
ADA or 42 U.S.C. § 1983.

1983 where a plaintiff's claim touches upon racial or disability discrimination, or retaliation for the exercise of First Amendment rights, notwithstanding the sweeping immunity states enjoy under the Eleventh Amendment.[9]  Having noted the broad immunity afforded states under the Eleventh Amendment, the Court rejects Plaintiff's unsupported argument, and finds that Defendant is immune from Plaintiff's claims brought under § 1983.

Moreover, even were the Court to find that the Commonwealth was not immune from Plaintiff's § 1983 claims, summary judgment would still be appropriate on Plaintiff's § 1983 claims because it is well established that states do not constitute "persons" for purposes of suits brought under § 1983.  See Will v. Mich. Dept. of State Police, 491 U.S. 58, 64 (1989).  Plaintiff has named only the L&I as a Defendant, and has dropped her claims against all individuals who were formerly named in the action.  Accordingly, Plaintiff has not brought any allegations against a "person" capable of being sued under § 1983.

For the foregoing reasons, the Court finds that Plaintiff's claims brought under 42 U.S.C. § 1983 are barred and summary judgment will be entered in favor of Defendant on these claims.

**B.**     **Plaintiff's Claims Under Title I of the ADA are Barred**

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).

---

[9]      Defendant has not asserted that it is immune from Plaintiff's Title VII claims under the Eleventh Amendment, despite Plaintiff's suggestion to the contrary.  Congress has used its authority under section 5 to the Fourteenth Amendment to abrogate the states' Eleventh Amendment immunity for purposes of suits brought under Title VII.  See 42 U.S.C. § 2000e(a) (including governments, governmental agencies, and political subdivisions as "persons" capable of being sued under Title VII).  The Supreme Court subsequently found Congress' abrogation of the states' immunity under Title VII to be constitutional.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 455 (1976).

Plaintiff's amended complaint provides no indication as to which section(s) of the ADA she is relying on in bringing her disability discrimination claims.  However, in her brief in opposition to summary judgment she appeared to be seeking relief under both Title I (prohibiting discrimination in the area of employment) and Title II (prohibiting discrimination in the areas of public services, programs, and activities).  Upon direction from the Court that she clarify the scope of her complaint, Plaintiff indicated that she was pursuing her claims under both Titles I and II of the ADA. (Doc. No. 50.)  For the reasons that follow, the Court concludes that summary judgment must be entered in favor of Defendant on either theory of liability, albeit for different reasons.

Title I of the ADA provides that:

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  In University of Alabama Board of Trustees v. Garrett, 531 U.S. 356 (2001), the Supreme Court held that the Eleventh Amendment precludes private litigants from maintaining a suit for money damages against a state for violations of Title I of the ADA.  Id. at 374.  Accordingly, to the extent Plaintiff is seeking money damages under Title I of the ADA, these claims are barred under the Eleventh Amendment.  Id.[10]

---

[10]     Plaintiff also argues that the Commonwealth "actually did consent" to be sued because Defendant furnished Plaintiff with an ADA Accommodation Request Form, which Plaintiff completed and which was signed by her supervisor, Beverly Scott.  (Doc. No. 40, at 8-9.)  Plaintiff cites no caselaw in support of this claim of waiver, and the Court finds that this argument is without merit.  The fact that Defendant provided ADA forms to its employees does not serve to waive the Commonwealth's immunity from suits under the ADA for money damages brought in federal court.  Furthermore, the Court does not find that the L&I has the

Although the Eleventh Amendment bars private individuals from suing states for money damages under Title I of the ADA, the Supreme Court noted that state officials could still be subjected to suit for injunctive relief for violations of the ADA.  See id. at 374 n.9 ("[the ADA's] standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under Ex parte Young, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908).").  Plaintiff notes that she has sued the Commonwealth for injunctive relief, and therefore claims that summary judgment on these claims is inappropriate under Garrett.[11]  The Court rejects this argument, because Plaintiff has not brought suit against any Commonwealth employees or officers in their official capacities, as contemplated by the exception to Eleventh Amendment immunity enunciated in Ex parte Young.

The United States Court of Appeals for the Third Circuit has explained the holding of Ex parte Young as follows:

> In Ex parte Young, the Supreme Court found a state official acting in violation of the Constitution or federal law acts ultra vires and is no longer entitled to the state's immunity from suit.  The "Young fiction" allows courts to avoid entering judgments directly against the state while permitting individual actions against officials violating federal law.

Koslow v. Pennsylvania, 302 F.3d 161, 177 n.20 (3d Cir. 2002).  Essentially, Ex parte Young provides a means for plaintiffs to seek prospective injunctive relief for ongoing violations of

_____

authority to waive the Commonwealth's immunity under the Eleventh Amendment.

[11]     In addition to money damages, Plaintiff seeks "reinstatement to her former employment with the Commonwealth [and] expungement of all negative entries in her personnel file concerning the Commonwealth's unlawful activities . . . ."  (Am. Compl. at 8.)  The Third Circuit has held that claims for reinstatement, with accommodation for disability, are "the type of injunctive, 'forward-looking' relief cognizable under Ex parte Young."  Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002).

federal law by bringing an official capacity action against state officials, rather than against a

state directly, without running afoul of the Eleventh Amendment:

> Unless a State has waived its Eleventh Amendment immunity or
> Congress has overridden it, however, a State cannot be sued
> directly in its own name regardless of the relief sought.  Thus,
> implementation of state policy or custom may be reached in
> federal court only because official-capacity actions for prospective
> relief are not treated as actions against the State.

Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (emphasis added) (citations omitted).

Plaintiff has not brought an official-capacity action against any employee or official of the

Commonwealth; rather, she has brought suit directly against the L&I, an agency of the

Commonwealth.  Accordingly, this is precisely the type of action the Eleventh Amendment

prohibits, regardless of the fact that Plaintiff may be seeking injunctive relief.  Because Plaintiff

has not brought an official-capacity action, Ex parte Young is not applicable, and the Eleventh

Amendment remains an absolute bar to Plaintiff's claims under Title I of the ADA.

### C. Employment Discrimination Claims Are Not Cognizable Under Title II of the ADA.

In the amended complaint, Plaintiff did not specifically assert any claims against the

Commonwealth under Title II of the ADA, but upon direction from the Court that she clarify her

causes of action, Plaintiff averred that her claims against the L&I were premised on both Title I

and Title II of the ADA.  (Doc. No. 50.)  Despite the fact that a plaintiff's ability to sue states

and their agencies for alleged employment discrimination under Title II of the ADA is a matter

of significant dispute among the circuits, Plaintiff offers no real argument as to why her

employment claims should be cognizable under Title II of the ADA.  Upon consideration, the

Court finds that Plaintiff's employment-related claims are not properly cognizable under Title II.

Title II of the ADA provides that:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  The Third Circuit has not had occasion to consider whether employment claims are cognizable under Title II, or whether Title I provides the exclusive statutory mechanism for prosecuting employment discrimination claims under the ADA.[12]  In Garrett, supra, the Supreme Court expressly declined to address this question because the parties had not done so in their briefs.  Garrett, 531 U.S. at 360 n.1.

District courts within the Third Circuit considering the issue have reached differing conclusions.  Several district court decisions concluded that employment discrimination claims are not cognizable under Title II.  See, e.g., Scott v. Pa. Dep't of Pub. Welfare, No. 02-3799, 2003 U.S. Dist. LEXIS 18081, *13 n.6 (E.D. Pa. Aug. 28, 2003) (concluding, in dicta, that "the disability discrimination about which plaintiff complains – arising out of her employment by defendant – cannot be construed as a claim under Title II of the ADA."); Nelson v. Pa. Dep't of Pub. Welfare, 244 F. Supp. 2d 382, 388-89 (E.D. Pa. 2002) ("Given that . . . Congress expressly provided for employment discrimination in Title I [of the ADA], . . . Title II fails to mention employment, . . . the 'services, programs, or activities' discussed in Title II are not common synonyms for employment, and . . . neither Congress nor the courts have equated employment

---

[12]     See Lavia v. Pennsylvania, 224 F.3d 190, 194 n.2 (3d Cir. 2000) (declining to address the question because, inter alia, the parties failed to address the issue and it was not clear that the plaintiff had even brought suit under Title II in the first instance); see also Koslow, 302 F.3d at 166 (3d Cir. 2002) (expressly reserving consideration of the question because of plaintiff's failure to appeal the issue).

with 'services, programs, or activities' in this legal context, I cannot reasonably conclude that Title II was intended to provide a cause of action for victims of employment discrimination"); Koslow v. Pennsylvania, 158 F. Supp. 2d 539, 542 (E.D. Pa. 2001) ("Congress intended Title I [of the ADA] to be the sole avenue for pursuing employment discrimination claims based on disability"), aff'd in part, rev'd on other grounds, 302 F.3d 161 (3d Cir. 2002).

In contrast, in several earlier decisions courts within this circuit found that employment claims could be brought under either or both Title I and Title II.  See, e.g., Saylor v. Ridge, 989 F. Supp. 680, 688 (E.D. Pa. 1998); Bracciale v. City of Philadelphia, No. 97-2464, 1997 U.S. Dist. LEXIS 16757, *21 (E.D. Pa. Oct. 29, 1997) (holding that "Title II covers employment discrimination by a public entity" and that plaintiffs were not required to exhaust administrative remedies, although acknowledging that plaintiffs would have been required to exhaust before proceeding under Title I); Benedum v. Franklin Twp. Recycling Ctr., No. 95-1343, 1996 U.S. Dist. LEXIS 21929, *13-15 (W.D. Pa. Sept. 12, 1996) (holding that regulations promulgated by the Attorney General of the United States "establish" that Title II's prohibition against discrimination includes employment); Bruton v. Se. Pa. Transp. Auth., No. 94-3111, 1994 U.S. Dist. LEXIS 12087, *5-6 (E.D. Pa. Aug. 22, 1994).

The Court has found only two circuits that have squarely addressed whether employment actions may be brought under Title II of the ADA, and these courts have reached opposite conclusions.  Compare Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169, 1184 (9th Cir. 1999) (holding that Title II does not apply to employment claims) with Bledsoe v. Palm Beach County Soil & Water Conserv. Dist., 133 F.3d 816, 820 (11th Cir. 1998) (holding Title II does apply to employment claims).  The Fourth, Fifth, and Tenth Circuits appear to have assumed, without

deciding, that Title II applies to claims of public employment discrimination.  See Davoll v.

Webb, 194 F.3d 1116, 1130 (10th Cir. 1999); Holmes v. Texas A&M Univ., 145 F.3d 681, 684

(5th Cir. 1998); Doe v. Univ. of Md. Medical Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995).

Upon consideration of dicta from Garrett and analysis of the relevant statutory provisions

and structure of the ADA, the Court agrees with the Ninth Circuit's reasoning in Zimmerman

and concludes that employment discrimination claims are not cognizable under Title II of the

ADA.  For this reason, the Court finds it unnecessary to additionally consider whether Congress

permissibly abrogated the States' Eleventh Amendment immunity under Title II.

### i.      Department of Justice Regulations

Those courts that have concluded employment discrimination claims are cognizable

under Title II of the ADA have typically reached this decision by relying upon regulations

promulgated by the Department of Justice interpreting Title II to prohibit employment

discrimination by state entities.  See, e.g., Bledsoe, 133 F.3d at 822.  That regulation, 28 C.F.R. §

35.140, states, in relevant part:

> No qualified individual with a disability shall, on the basis of
> disability, be subjected to discrimination in employment under
> any service, program, or activity conduct by a public entity.

28 C.F.R. § 35.140(a).  Although these regulations reference employment, courts must initially

decide whether the regulations are entitled to any deference in accordance with Chevron U.S.A.,

Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) and, if so, whether the regulations

are based upon a reasonable interpretation of the statute.  Id. at 843-44.[13]  In a carefully reasoned

opinion, the Ninth Circuit determined that the regulations are not entitled to deference because

"Congress unambiguously expressed its intent for Title II not to apply to employment."

Zimmerman, 170 F.3d at 1173.  In contrast, the Eleventh Circuit relied principally on the

Attorney General's regulations in concluding that "employment coverage is clear from the

language and structure of Title II" and deferring to the Attorney General's "reasonable

construction of statutory language."  Bledsoe, 133 F.3d at 822-23.

Upon careful consideration, the Court agrees with the reasoning of Zimmerman that the

text of Title II and the structure of the ADA do not encompass employment discrimination

claims.  Accordingly, the Court finds the Attorney General's regulations are entitled to no weight

in interpreting Title II's application.

---

[13]       The Court in Chevron explained:

> When a court reviews an agency's construction of the statute
> which it administers, it is confronted with two questions.
> First, always, is the question whether Congress has directly
> spoken to the precise question at issue.  If the intent of
> Congress is clear, that is the end of the matter; for the court,
> as well as the agency, must give effect to the unambiguously
> expressed intent of Congress.  If, however, the court
> determines Congress has no directly addressed the precise
> question at issue, the court does not simply impose its own
> construction of the statute, as would be necessary in the
> absence of an administrative interpretation.  Rather, if the
> statute is silent or ambiguous with respect to the specific
> issue, the question for the court is whether the agency's
> answer is based on a permissible construction of the
> statute . . . Such legislative regulations are given controlling
> weight unless they are arbitrary, capricious, or manifestly
> contrary to the statute.

467 U.S. 837, 842-44 (emphasis added) (footnotes omitted).

**ii.     Employment does not constitute "services, programs or activities"**

In enacting Title II, Congress did not define "services, programs, or activities."  42

U.S.C. § 12132.  When interpreting statutory language, the Third Circuit has directed that

"words in a statute should be given their ordinary meaning whenever possible."  Okeke v.

Gonzalez, 407 F.3d 585, 593 (3d Cir. 2005).  The Court finds the Ninth Circuit's Zimmerman

decision persuasive with respect to its plain-meaning interpretation that "employment by a public

entity is not commonly thought of as a 'service, program, or activity of a public entity.'"  170

F.3d at 1174.  As the court in Zimmerman explained, such terms instead generally refer to

"outputs" of a public agency, rather than "inputs", such as employment.  Id.  Because the Court

does not find that employment would ordinarily be considered a service, program, or activity of a

public entity, the Court finds that an employment discrimination claim cannot be predicated on

the first clause of 42 U.S.C. § 12132.

Courts that have found employment claims cognizable under Title II have tended to rely

on the second clause of the statute, which broadly states that "no qualified individual with a

disability shall, by reason of such disability, . . . be subjected to discrimination by any such

entity."  Id.; see, e.g., Bledsoe, 133 F.3d at 821-22 ("The prohibition in the final clause of the

section . . . protects qualified individuals from being 'subjected to discrimination by any [public]

entity,' and is not tied directly to the 'services, programs, or activities' of the public entity")

(quoting 42 U.S.C. § 12132).  However, to afford such a broad interpretation of this clause to

encompass employment discrimination claims conflicts directly with other provisions of Title II

and the entire structure of the ADA.

In order to prevail on a claim under Title II, a plaintiff must first prove that she is a

"qualified individual with a disability."  42 U.S.C. § 12132.  Title II of the ADA defines a

"qualified individual with a disability" as:

> an individual with a disability who, with or without reasonable
> modifications to the rules, policies, or practices, the removal of
> architectural, communication, or transportation barriers, or the
> provision of auxiliary aids and services, meets the essential
> eligibility requirements <u>for the receipt of services or the
> participation in programs or activities provided by a public
> entity</u>.

42 U.S.C. § 12131(2) (emphasis added).  Because Congress required that each Title II plaintiff

"meet[] the essential eligibility requirements for the receipt of services or the participation in

programs or activities provided by a public entity," Title II's definition of a "qualified individual

with a disability" necessarily ties the catch-all prohibition against discrimination to the "services,

programs or activities" of the public entity.  <u>Id.</u>  The Ninth Circuit explained this interpretation

as follows:

> A plaintiff is not "qualified" to bring any Title II claim unless he or
> she "meets the essential eligibility requirements" of a government
> service, program, or activity provided by a public entity.  The second
> clause of § 12132 therefore must relate to a government service, program,
> or activity; otherwise a plaintiff is not "qualified" to bring a claim under
> that clause.  Using the ordinary meaning of the phrase emphasized above,
> we return to what we said about the first clause of § 12132.  Obtaining or
> retaining a job is not "the receipt of services," nor is employment a
> "program[] or activity provided by a public entity."  Again, the "action"
> words in the statute assume a relationship between a public entity, on the
> one hand, and a member of the public, on the other. The former provides
> an output that the latter participates in or receives. . . . [Accordingly]
> the second clause of 42 U.S.C. § 12132, like the first, prohibits
> discrimination only in a public entity's "outputs."  Thus, the wording of
> 42 U.S.C. § 12132 does not permit an inference that Congress intended
> for Title II to apply to employment.

<u>Zimmerman</u>, 170 F.3d at 1175-76.  The Court agrees that employment does not constitute a

service, program, or activity of a public entity, and therefore the Court finds that employment

disputes are outside the scope of Title II.

### iii.    Structure of the ADA

In addition to the foregoing statutory interpretation, the Court finds that the structure of the ADA as a whole supports the conclusion that employment discrimination claims are not cognizable under Title II.  First, Title I is specifically entitled "Employment" and prohibits covered entities from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Under Title I, the term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Additionally, Title I defines the term "reasonable accommodation" to include" job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position."  42 U.S.C. § 12111(9)(B).  Finally, Title I expressly incorporates the procedures and remedies provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., including the requirement that charges of employment discrimination first be filed and investigated by the EEOC.  42 U.S.C. § 12117.

In contrast, Title II is entitled "Public Services," and does not refer to employment, nor does it define "qualified individual with a disability" or any other statutory term with reference to employment.  42 U.S.C. § 12131.  More importantly, Title II expressly incorporates the procedures and remedies provided by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, which do not require that plaintiffs first pursue their claims through the EEOC as required by

Title VII's exhaustion requirements made applicable to claims brought under Title I.  42 U.S.C.

§ 12133.  Accordingly, if plaintiffs were permitted to bring employment actions under Title II of

the ADA, they would be able to pursue their claims without first complying with the exhaustion

requirements mandated by Title VII, whereas plaintiffs pursuing employment claims under Title

I would be required first to submit their claims to the EEOC.  The Court finds such an

interpretation would lead to incongruous results by allowing public employees to evade the

administrative process Congress contemplated.

For all of the foregoing reasons, the Court agrees with the reasoning of Zimmerman and

the cases following its analysis in concluding that the ADA clearly expressed Congress' intent

that employment claims are to be governed exclusively by Title I, and no valid cause of action

for employment discrimination can be brought pursuant to Title II of the ADA.[14]

In addition to being firmly convinced that the ADA's text and statutory structure do not

provide for employment claims under Title II of that statute, the Court finds that dicta from

Board of Trustees v. Garrett suggests that the Supreme Court would find Title II inapplicable in

the context of employment cases.  In declining to address the question of whether employment

discrimination claims could be brought under Title II of the ADA "when Title I of the ADA

expressly deals with that subject," the Court quoted Russello v. United States, 464 U.S. 16, 23

(1983) for the proposition that where "Congress includes particular language in one section of a

---

[14]      See, e.g., Brettler v. Purdue Univ., 2006 U.S. Dist. LEXIS 1645 (N.D. Ind. Jan. 10, 2006); Cormier v. City of Meridien, 2004 U.S. Dist. LEXIS 21104 (D. Conn. Sept. 30, 2004); Filush v. Town of Weston, 266 F. Supp. 2d 322 (D. Conn. 2003); Sworn v. W. N.Y. Children's Psychiatric Ctr., 269 F. Supp. 2d 152 (W.D.N.Y. 2003); Sturdivant v. Ind. Prot. & Advocacy Servs., 2003 U.S. Dist. LEXIS 22210 (S.D. Ind. Sept. 26, 2003); Syken v. N.Y. Exec. Dep't of Hous. & Comty. Renewal, 2003 U.S. Dist. LEXIS 5358 (S.D.N.Y. Apr. 2, 2003); Currie v. Group Ins. Comm'n, 147 F. Supp. 2d 30 (D. Mass. 2001).

statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Garrett, 356 U.S. at 360 n.1. As Title I is entitled "Employment" and specifically covers claims for employment discrimination, the Court reasons that this dicta from Garrett suggests that the Court would not find Title II applicable to employment discrimination actions.

For all of the foregoing reasons, the Court finds that Plaintiff cannot maintain her employment discrimination claims under Title II of the ADA and Defendant is entitled to summary judgment on such claims.

### D.     Title VII Reverse Discrimination Claim

Plaintiff also alleges that she suffered disparate treatment based on her race in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").  Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  The Supreme Court has described the policy behind this provision as follows:  "The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions.  In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801 (1973).  Accordingly, "[t]he court's factual inquiry in a Title VII case is whether the employer intentionally discriminated against the employee."  Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993) (citing

United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983)).

In order to avoid summary judgment, a plaintiff claiming disparate treatment pursuant to Title VII who lacks direct evidence of discrimination must initially establish a prima facie case.[15] McDonnell Douglas, 411 U.S. at 802; Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318 (3d Cir. 2000).  Under the traditional McDonnell Douglas framework, a plaintiff must show that:  (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) a similarly-situated person, who is not in her protected class, was treated more favorably. Goosby, 228 F.3d at 313.

Where, as is the case here, a plaintiff is not a member of a minority group and has brought suit under Title VII on a reverse discrimination theory, the Third Circuit has instructed that courts should apply a modified McDonnell Douglas test as follows:

> all that should be required to establish a prima facie case in the context of "reverse discrimination" is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII.

 Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999).  "Once the plaintiff establishes his or her prima facie case, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for its employment decision."  Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995).  If the defendant meets its burden, the plaintiff, in order to survive a motion for summary judgment, "must point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

---

[15]  The Court notes that Plaintiff has not produced direct evidence of discrimination which, if believed, would prove discrimination "without inference or presumption."  Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994).

an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). A plaintiff cannot simply show that the employer's decision was unwise or wrong but must demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons. Iadimarco,190 F.3d at166. Upon review of the record, the Court concludes that Plaintiff has failed to present sufficient evidence to refute the legitimate reasons proffered by Defendant, nor sufficient evidence that would allow a fact finder to conclude that Defendant treated her or other non-minority employees less favorably on the basis of a trait that is protected under Title VII.

Plaintiff has predicated her reverse discrimination claim on her allegation that she was disciplined more harshly than African American co-workers at the L&I. (Doc. No. 38 ¶¶ 6-8.) Specifically, Plaintiff claimed that Deb Williams, an African American co-worker, was not terminated following a physical altercation with Plaintiff; that Angela Johnson, another African American co-worker, was regularly disruptive and loud while at work; and that Ruby Giles, also an African American, could do "anything she wanted" and was rarely at work. (Id. ¶¶ 7-9.) The factual record, however, contains evidence that: (1) both Deb Williams and Plaintiff received verbal reprimands following their physical altercation; (2) Angela Johnson was placed on probation as the result of an employee performance evaluation that reflected the need for improving her work relationships and because she talked excessively with co-workers; and (3) Ruby Giles received a written reprimand and another disciplinary action due to absenteeism. (Id. ¶¶ 14, 28-30.) In contrast to this evidence, Plaintiff offers nothing more than her own conclusory allegations and self-serving testimony in an effort to create an issue of fact as to racially

disparate treatment at the L&I.  The Court finds Plaintiff's showing to be inadequate.

In her brief in opposition to Defendant's motion for summary judgment, Plaintiff argues that Defendant's proffer of the foregoing evidence "is disingenuous and borders on the absurd," although she provides no clear explanation for this statement.  (Doc. No. 44 at 11.)  Plaintiff essentially attempts to support her reverse discrimination claim by contending that the physical altercation between herself and Deb Williams was the result of "an overactive fit of spleen" on the part of Ms. Williams, and that the incident "exceed[ed]" Plaintiff's own conduct that led to her termination.  (Id.)  Plaintiff fails to point out that she and Ms. Williams received identical verbal reprimands following their physical altercation upon a determination that both women played a role in the dispute.  Moreover, other than Plaintiff's own self-serving allegations and conclusory deposition testimony, the record contains ample evidence demonstrating that the altercation between herself and Ms. Williams was different in kind and degree from Plaintiff's own outburst that led to her termination.  In sum, the Court finds that Plaintiff's subjective assessment of this prior altercation alone is insufficient to create a genuine issue of material fact on her claim of racial discrimination.

Furthermore, even if the Court were to find that Plaintiff had managed to adduce sufficient evidence to allow a fact finder to conclude that she was discriminated against on the basis of her race, the evidence demonstrates numerous legitimate and nondiscriminatory reasons supporting Plaintiff's termination that would satisfy Defendant's burden under McDonnell Douglas.  Substantial evidence in the record indicates that Plaintiff became hostile and abusive with her co-workers and supervisory employees, disrupted the workplace, shoved a co-worker, and caused employees to feel threatened.  Such evidence would establish that Defendant had

legitimate and nondiscriminatory reasons for discharging Plaintiff from her employment.

In response to such evidence, Plaintiff was required to come forward with sufficient evidence to show that Defendant's proffered nondiscriminatory reasons were pretextual and that Defendant intentionally discriminated against her on the basis of race. Plaintiff failed to present any evidence that Defendant's proffered reasons were pretextual and this failure represents an additional basis upon which summary judgment for Defendant is warranted on Plaintiff's Title VII claims.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, the Court finds that Defendant is entitled to summary judgment on all of Plaintiff's claims.[16]   An appropriate Order follows this memorandum.

---

[16]   In her brief in opposition to Defendant's motion for summary judgment, Plaintiff avers for the first time that she is advancing a claim under the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a. Neither the Complaint nor the Amended Complaint contain a claim under the Rehabilitation Act, nor could either be read to reasonably include such a claim. Accordingly, such claim will not be considered.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBIN MARIE MCSHERRY,** | : | |
| | : | **Civil Action No. 1:04-CV-132** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DEPARTMENT OF LABOR &** | : | |
| **INDUSTRY, BUREAU OF WORKERS'** | : | |
| **COMPENSATION,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

And now, this 23rd day of February, 2006, for the reasons set forth in the within

memorandum, **IT IS HEREBY ORDERED THAT** Defendant's Motion for Summary

Judgment (Doc. No. 35) is **GRANTED**.  The Clerk of Court is directed to enter judgment in

favor of Defendant and to close the file.


    S/ Yvette Kane

Yvette Kane

United States District Judge
